
AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Iowa

| United States of America | ) |
| v. | ) |
| | ) Case No. 18-mj-68 |
| Dino Harrington and | ) |
| Tiffany Youngblood | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **March 5, 2018** in the county of **Linn** in the **Northern** District of **Iowa**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 | Distribution and Aiding & Abetting the Distribution of a Controlled Substance. |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Kelly M. Meggers, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/5/2018

*Judge's signature*

City and state: Cedar Rapids, Iowa   C.J. WILLIAMS, Chief U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Kelly M. Meggers, being duly sworn, depose and state that:

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I am a Special Agent with the Iowa Division of Narcotics Enforcement (DNE) and have been since May of 2005. My current assignment is as a Task Force Officer with the Drug Enforcement Administration (DEA) in Cedar Rapids, Iowa. I have been assigned to DEA since April 2007, and I am responsible for investigating violations of federal controlled substance laws. In April 2007, I was deputized as a DEA Task Force Officer pursuant to the authority granted to the Attorney General by Public Law 99-570, Section 1869, and delegated to the Administrator of the Drug Enforcement Administration, pursuant to Title 28, Code of Federal Regulations, subpart R, Section 0.100, et seq.

3. Prior to my employment with DNE and DEA, I was employed by the Iowa Division of Criminal Investigation (DCI) from March 2001 until May 2005. In addition to my formal training with Iowa DNE and Iowa DCI, I have completed DEA Basic Narcotics Investigators School, the Advanced DEA Narcotics Investigators School, Investigating Mexican Drug Trade Organizations, Internet Exploitation Investigations, and various other courses which have familiarized me with the operation of drug trafficking

1

organizations, methods of importation and distribution of controlled substances by drug traffickers, and financial methods of drug traffickers. Based on my training and experience, I am familiar with narcotic traffickers' methods of operation, including the distribution, storage, and transportation of narcotics, and the collection of money proceeds of narcotics trafficking, and methods of money laundering used to conceal the nature of the proceeds. I have conducted or participated in over 100 investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as related money laundering statutes involving the proceeds of specified unlawful activities and conspiracies associated with criminal narcotics, and am familiar with the federal drug trafficking and money laundering statutes.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agent witnesses. This affidavit is intended to show merely that there is sufficient probable cause to believe Dino HARRINGTON and Tiffany YOUNGBLOOD committed the crimes alleged in the Complaint, and does not set forth all of my knowledge about this matter. Specifically, based on the information below, I believe there is probable cause to believe on or about March 5, 2018, in the Northern District of Iowa, Dino HARRINGTON and Tiffany YOUNGBLOOD distributed, and aided and abetted the distribution of, heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

2

Case 1:18-mj-00068-CJW   Document 3   Filed 03/06/18   Page 3 of 9

## PROBABLE CAUSE

### Controlled Buy on March 1, 2018

5. On March 1, 2018, members of the DEA Task Force, Cedar Rapids Police Narcotics Unit, and Johnson County Drug Task Force, coordinated the controlled purchase of heroin from Dino HARRINGTON and Tiffany YOUNGBLOOD. On that date, at approximately 7:45 a.m., investigators began conducting surveillance on a Cedar Rapids residence known to be occupied by HARRINGTON and YOUNGBLOOD. At approximately 7:51 a.m., investigators observed HARRINGTON and YOUNGBLOOD leave their residence. Investigators continued surveillance on HARRINGTON and YOUNGBLOOD.

6. On that same date, investigators met with a confidential source (CS)[1] for the purpose of conducting the controlled purchase of heroin from HARRINGTON and YOUNGBLOOD. CS had previously identified photographs of HARRINGTON and YOUNGBLOOD as individual that sold heroin to CS. CS told investigators that CS made several prior purchases of heroin from HARRINGTON and YOUNGBLOOD and that these sales usually took place in the area of Wright Brothers Blvd. SW and 6th Street SW, Cedar Rapids, Iowa. CS indicated that CS would meet with HARRINGTON and YOUNGBLOOD at local businesses or gas stations in that area.

---

[1] CS has a prior Operating While Intoxicated conviction. CS is not cooperating in exchange for consideration on any pending charges. CS was paid $25 for each controlled transaction.

3

7. Investigators utilized CS to arrange the controlled purchase of approximately one-half gram of heroin from HARRINGTON and YOUNGBLOOD for $100.00. To arrange the meeting, at approximately 8:30 a.m., CS made contact with HARRINGTON and YOUNGBLOOD by sending a text message to telephone number (319) 210-2120. During this text message conversation, the CS was directed to meet at the McDonalds restaurant near Wright Brothers Blvd SW and 6th Street SW, in Cedar Rapids. According to the CS, this was a common meet location for the CS to meet with HARRINGTON and YOUNGBLOOD. In preparation for the controlled meeting, CS was equipped with a body wire transmitter so that investigators were able to hear and record the meeting with HARRINGTON and YOUNGBLOOD as it occurred. Investigators searched CS and CS's vehicle prior to the controlled meeting, with no contraband found. Investigators followed the CS as CS drove to the designated meet location.

8. At approximately 9:23 a.m., the investigators conducting surveillance of HARRINGTON and YOUNGBLOOD indicated that HARRINGTON and YOUNGBLOOD's vehicle was nearing the meet location. At approximately that same time, the CS received a text message from (319) 210-2120, telling the CS to go next door to the Kwik Star gas station, and to go into the men's restroom. Investigators watched as the CS drove from the McDonalds to the Kwik Star gas station next door. Investigators observed the CS walk inside the gas station. At approximately that same time, investigators observed

HARRINGTON and YOUNGBLOOD arrived in the gas station's parking lot. Investigators observed HARRINGTON exit the vehicle and walk inside the gas station. According to the CS, the CS met with HARRINGTON inside the men's restroom, where the CS purchased approximately one-half gram of heroin from HARRINGTON for $100.00. Investigators observed HARRINGTON exit the gas station and get back inside the vehicle with YOUNGBLOOD. HARRINGTON and YOUNGBLOOD then left the area. CS met with investigators and provided the purchased heroin to investigators. The heroin was field tested and tested positive for heroin. Following the meeting, CS again identified Dino HARRINGTON as the person that sold CS the heroin.

### Controlled Buy and Traffic Stop on March 5, 2018

9. On March 5, 2018, investigators again met with the same confidential source (CS) for the purpose of arranging another controlled purchase of heroin from HARRINGTON and YOUNGBLOOD. At approximately 8:30 a.m., investigators met with the CS and conducted a search of CS and CS's vehicle, locating no contraband. Investigators instructed CS to place a text message to (319) 210-2120, the number used by HARRINGTON and YOUNGBLOOD, requesting to meet and purchase heroin. During that text message conversation, HARRINGTON and YOUNGBLOOD agreed to meet the CS at the same gas station where the March 1, 2018, buy occurred. Investigators followed the CS as the CS drove to the gas station as instructed by

5

HARRINGTON and YOUNGBLOOD, arriving at approximately 10:00 a.m. At approximately 10:10 a.m., investigators watched as HARRINGTON and YOUNGBLOOD arrived in the area. Around that time, CS received a text message from (319) 210-2120, instructing the CS to instead meet in the men's restroom at the McDonalds in Cedar Rapids. Investigators watched as the CS drove from the gas station to the McDonalds restaurant located next door. Investigators observed CS enter the restaurant. At approximately that same time, HARRINGTON and YOUNGBLOOD arrived in the McDonalds parking lot. HARRINGTON was driving the vehicle. Investigators observed HARRINGTON exit the vehicle and walk inside the restaurant. According to CS, CS met with HARRINGTON inside the men's restroom, where HARRINGTON distributed approximately one-half gram of heroin to the CS for $100.00. Investigators observed HARRINGTON exit the restaurant and enter the vehicle with YOUNGBLOOD. HARRINGTON and YOUNGBLOOD then left the area. CS met with investigators and provided the purchased heroin to investigators. The heroin was field tested and tested positive for heroin, a Schedule I controlled substance. Following the meeting, CS again identified Dino HARRINGTON as the person that sold CS the heroin.

10. Following the March 5, 2018, controlled purchase, investigators coordinated with marked uniform patrol officer to conduct a traffic stop of HARRINGTON and YOUNGBLOOD, for the purpose of taking both HARRINGTON and YOUNGBLOOD into custody for distribution of heroin. As a result of the

traffic stop, investigators located a loaded Taurus .380 pistol inside the vehicle. Upon searching YOUNGBLOOD, investigators located 3 bags of heroin in her lower right coat pocket, and four larger bags containing approximately ten individually wrapped bags of heroin inside her left breast coat pocket, totaling approximately 12 bags of heroin and weighing approximately 6 grams. Based on my training and experience, this is a quantity consistent with distribution. Upon searching HARRINGTON, investigators located five twenty-dollar bills that matched the serial numbers of the twenty-dollar bills used by the CS during the March 5, 2018, purchase of heroin.

11. YOUNGBLOOD provided a post-Miranda statement after her arrest. Among other things, YOUNGBLOOD admitted that she worked with HARRINGTON to sell heroin. YOUNGBLOOD stated that she typically was the person who used the phone to communicate with customers, while HARRINGTON would be the person who would often physically deliver the heroin to the customers.

### Criminal History Reports

12. Dino HARRINGTON was arrested in 2010, and again in 2011, for the Manufacture/Delivery of a Controlled Substance, in Chicago, Illinois. Investigators are still in the process of locating disposition records for these arrests/charges. Tiffany YOUNGBLOOD has no known criminal history beyond driving offenses.

## Conclusion

13. Based upon my training and experience, and all the information set forth herein, I submit that there is probable cause to believe that, on March 5, 2018, in the Northern District of Iowa, Dino HARRINGTON and Tiffany YOUNGBLOOD committed the crime of distribution and aiding and abetting the distribution of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2.

I declare under penalty of perjury that the above-foregoing facts and circumstances are true and correct to the best of my knowledge and belief.

Dated this 5th day of March, 2018.

_____
KELLY M. MEGGERS
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me by Kelly M. Meggers, a Task Force Officer with the Drug Enforcement Administration on this 5th day of March, 2018.

_____
C.J. WILLIAMS
Chief United States Magistrate Judge
Northern District of Iowa